UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MARY ELLEN ANKUDA, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Docket No. 07-95-P-H |
| ) | |
| R.N. FISH & SON, INC., ) | |
| ) | |
| Defendant ) | |

*MEMORANDUM DECISION ON MOTION* **IN LIMINE**

Defendant R.N. Fish & Son, Inc. filed a motion *in limine* to exclude testimony of plaintiff Mary Ellen Ankuda's designated expert witnesses, Daniel Briggs, David A. Halsey, M.D., and various health-care providers. *See* Defendant's Motion in Limine To Exclude Expert Testimony, etc. ("Motion") (Docket No. 7) at 1. Based on the plaintiff's counsel's representations in his client's opposing brief, the defendant withdrew its motion with respect to Ankuda's health-care providers, including Dr. Halsey. *See* Defendant's Reply Memorandum in Support of Its Motion *In Limine* To Exclude Expert Testimony ("Reply") (Docket No. 9) at 5. For the reasons that follow, I grant the Motion insofar as it pertains to Briggs.

**I.  Applicable Legal Standard**

The defendant seeks to exclude Briggs' testimony pursuant to Federal Rule of Evidence 702, *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), on grounds that it is speculative, unreliable, insufficiently grounded and unhelpful to the trier of fact. *See* Motion at 3-6. Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  Under Rule 702, "it is the responsibility of the trial judge to ensure that an expert is sufficiently qualified to provide expert testimony that is relevant to the task at hand and to ensure that the testimony rests on a reliable basis."  *Beaudette v. Louisville Ladder, Inc.*, 462 F.3d 22, 25 (1st Cir. 2006).  With respect to reliability:

> In *Daubert,* the Supreme Court set forth four general guidelines for a trial judge to evaluate in considering whether expert testimony rests on an adequate foundation: (1) whether the theory or technique can be and has been tested; (2) whether the technique has been subject to peer review and publication; (3) the technique's known or potential rate of error; and (4) the level of the theory or technique's acceptance within the relevant discipline.  However, these factors do not constitute a definitive checklist or test, and the question of admissibility must be tied to the facts of a particular case.

*Id.* (citations and internal quotation marks omitted); *see also, e.g., Zachar v. Lee*, 363 F.3d 70, 76 (1st Cir. 2004) ("The court's assessment of reliability is flexible, but an expert must vouchsafe the reliability of the data on which he relies and explain how the cumulation of that data was consistent with standards of the expert's profession.") (citation and internal quotation marks omitted).

As the First Circuit has observed, "*Daubert* does not require that the party who proffers expert testimony carry the burden of proving to the judge that the expert's assessment of the situation is correct."  *United States v. Mooney*, 315 F.3d 54, 63 (1st Cir. 2002) (citation and internal quotation marks omitted).  "It demands only that the proponent of the evidence show that the expert's conclusion has been arrived at in a scientifically sound and methodologically reliable fashion."  *Id*. (citation and internal quotation marks omitted).  That said, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only

2

by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.*, 161 F.3d 77, 81 (1st Cir. 1998) (citation and internal quotation marks omitted).

## II.  Analysis

The plaintiff alleges that on or about June 12, 2004 she sustained personal injuries while a passenger aboard a vessel owned and operated by the defendant, the M/V PINK LADY II ("Vessel"). *See* Plaintiff's Complaint, etc. (Docket No. 1) ¶¶ 1-11. She attributes her injuries to the defendant's negligence. *See id*. ¶ 14. Her expert disclosure lists, among her expected expert witnesses, marine surveyor Daniel Briggs. *See* Plaintiff's Expert Disclosure ("Plaintiff's Disclosure"), attached to Motion, at 1. Attached to the Disclosure is a report of Briggs in which he states that he has reviewed photographs of the Vessel's interior and exterior taken on September 12, 2007, a photograph of the Vessel taken from the company's web site, buoy data and a summary of facts of the case prepared by the plaintiff's counsel (the latter, "Fact Summary"). *See* Letter dated October 4, 2007 from Daniel C. Briggs AMS to Mr. David Berg ("Briggs Report"), attached to Plaintiff's Disclosure. That Fact Summary recounts, in relevant part:

> Mary Ellen Ankuda was injured on the Pink Lady II on June 12, 2004, at approximately 11:15 AM. She was injured while going through the door that goes from the salon to the outside of the vessel on the right side. The door is towards the front of the vessel. Mrs. Ankuda was 69 years old at the time, with no significant prior maritime experience. She was on a weekend excursion to Maine with a group of elders from her local senior center. They were on the boat for a short, approximately 1½ hour, trip. They had left at approximately 10:30 AM, so the injury occurred about half way through the trip.
>
> Mrs. Ankuda's memory of the weather that morning is as follows: "It was approximately 70 degrees out. It was windy out. The boat was rocking. I cannot give the exact wind speed and wave height and direction."
>
> ***

> Mrs. Ankuda's memory of how the incident occurred is as follows: "I was in the dining room area and went out the right side door to look at some seals. I then went back in through the same door. I pulled open the door and went to step in, and but the wind slammed the door shut. The door hit me in the rear end and knocked me across the metal plate across the doorway and the door and then onto the ground. I landed on my right side and injured my right arm and right knee in the fall."
>
> You will note in the photographs that the door has a door closer and that there is also a warning notice on the window facing out . . . . Mrs. Ankuda testified that there was no door closer on the door on June 12, 2004, and that there was no warning sticker on the window. At this time, I am not aware of anyone who actually witnessed Mrs. Ankuda's accident.

Fact Summary, attached to Plaintiff's Disclosure. In his report, Briggs states, in relevant part:

> It is my opinion that a passenger vessel such as the Pink Lady II should have a door closer/damper on doors such as the doors leading in and out of the dining area/salon – i.e., safe and reasonable maritime practice would require door closers/dampers on such dampers [sic]. This device minimizes the risk to passengers of doors slamming on them at minor cost to the vessel owner. Also, given Coast Guard regulations require passenger vessels such as the Pink Lady II to have a high threshold on the door in question, safe and reasonable maritime practice would be to have a warning sticker to alert passengers of the threshold. Failure to have a door closer/dampener and warning sticker would be a deviation from safe practices.
>
> It is my opinion for the accident to have occurred as stated by Mrs. Ankuda the vessel may have encountered a wake from another vessel, a large swell, or could have been maneuvering. Any of these may have caused the door to close on her. The fact that the door did close on her as rapidly as she reports tells me that at the time of the accident the door was not fitted with a door closer/damper or if it was the device was not operating correctly.

Briggs Report.

In moving to exclude Briggs' testimony, the defendant complains that the foregoing opinions are, in effect, *ipse dixit* – supported only by Briggs' say-so. *See* Motion at 3-6. The plaintiff counters by:

    1.    Emphasizing the depth of Briggs' qualifications and experience (for example, that he has been in the maritime industry since 1970 and has been a marine surveyor for sixteen years).

*See* Opposition to Defendant's Motion In Limine To Exclude Expert Testimony, etc. ("Opposition") (Docket No. 8) at 1-2; Exh. A thereto.

2. Observing that Briggs' opinions regarding the necessity of a door closer and a warning sticker "need little if any explanation" and "barely qualify as expert opinions because it is so obvious to lay people that a door with a 6 inch (or more) threshold presents a danger" and because it is fairly apparent that most commercial establishments in New England are equipped with door closers and that those have been installed for safety reasons. *See* Opposition at 3.

3. Protesting that the defendant unreasonably challenges the basis for Briggs' opinion regarding the necessity of a door closer when its own expert, Thomas Hill, is expected to testify that the doorway in question was "equipped with an appropriate hydraulic door-closer which prevents the door from closing on anyone passing through the doorway." *Id.*; Defendant R. N. Fish & Son, Inc.'s Expert Witness Disclosure ("Defendant's Disclosure"), attached to *id.*, at 2.

4. Observing that, based on the plaintiff's description of how the accident occurred, "it is obvious to the lay person and to the expert that the door must have shut quite hard on her." Opposition at 4.

5. Asserting that, while Briggs performed no tests, experiments or studies, he took into account all possibilities and ruled out the least likely – an approach that has been approved by courts considering *Daubert* motions. *See id.* at 4-5. The plaintiff explains: "All Mr. Briggs is saying in his report is that the best explanation for why the accident occurred <u>as Mrs. Ankuda said that it did</u> is that either there was no door closer or that it was not working properly. . . . [I]f a door slams shut the way that Mrs. Ankuda has described, it does not take a rocket scientist to say that there was either no door closer or that it was not working correctly." *Id.* at 5.

5

In its reply brief, the defendant argues, *inter alia*, that the plaintiff falls well short of meeting her burden of demonstrating the reliability of Briggs' testimony as an expert, having all but conceded that his conclusions derive from common-sense observations and deductions. *See* Reply at 1-3. I agree.

The plaintiff essentially supplies two bases for Briggs' opinions: experience and common sense. "Experts may testify on the basis of experience." *Brown v. Wal-Mart Stores, Inc.*, 402 F. Supp.2d 303, 308 (D. Me. 2005). "However, if the expert witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Id.* (citation and internal punctuation omitted); *see also, e.g., Ambrosini v. Labarraque*, 101 F.3d 129, 133 (1st Cir. 1996) (for purposes of first prong of *Daubert* analysis, "'knowledge' connotes more than subjective belief or unsupported speculation") (citation and internal quotation marks omitted).

Briggs constructs no bridge from his experience to his conclusions. *See generally* Briggs Report; Opposition at 1-6. He does not illuminate the source of his knowledge that lack of a properly functioning door closer on a vessel or of warning signs on a vessel door contravenes safe and reasonable maritime practice – for example, that there are published maritime rules or standards so holding or that marine surveyors are so trained. *See generally id.* Nor does he explain on what basis he concluded, assuming the facts as stated by the plaintiff, that the door closer either was entirely lacking or not functioning properly – for example, that he possesses specialized knowledge and/or experience regarding door closers or relies on others' testing, studies or specifications regarding acceptable door-closer performance in conditions such as those described by the plaintiff. *See generally id.* He offers only his say-so. That does not suffice to withstand a *Daubert* challenge. *See,*

6

*e.g., Brown*, 402 F. Supp.2d at 308 ("We've been presented with only the experts' qualifications, their conclusions and their assurances of reliability. Under *Daubert*, that's not enough.") (citations and internal quotation marks omitted); *Nichols v. Continental Airlines*, No. CIV. 01-232-B-S, 2002 WL 1724017, at *3 (D. Me. July 23, 2002) ("In the present case [plaintiff's expert] opines that it was too dark in the plane and the flight attendants did not do adequate 'walk-throughs' because in his opinion [plaintiff] would not have fallen if there had been enough light and attentive flight attendants. This is no more than an, 'I say it; therefore it is so' averment.").

The plaintiff's proffer of obviousness (or common sense) as a foundation for Briggs' opinions is equally, if not more, unhelpful to her efforts to salvage his testimony in the face of the instant *Daubert* challenge. A statement of the obvious – which is within the ken of a lay jury or a judge presiding at a bench trial – is not a proper subject of expert testimony. *See, e.g., United States v. Zajanckauskas,* 441 F.3d 32, 39 (1st Cir. 2006) ("Expert testimony does not assist where the [trier of fact] has no need for an opinion because it easily can be derived from common sense, common experience, the [trier of fact's] own perceptions, or simple logic.") (citation and internal quotation marks omitted); *United States v. Fosher*, 590 F.2d 381, 383 n.1 (1st Cir. 1979) ("In saying that the expert would invade the province of the jury, we think the trial court was stating that the issue was not a proper subject of expert testimony under F.R.Evid. 702, that is, a subject beyond the ken of the ordinary juror and reliably analyzed by modern science."); *Brown*, 402 F. Supp.2d at 309 ("This Court concludes that the Plaintiff's expert designation is fatally deficient. Mr. Dodge's opinions merely place an expert sheen on common sense. Mr. Dodge arrives at conclusions as old as humanity itself: (1) if something is bumped, objects may fall; and, (2) the more bumped, the more likely.") (footnote omitted); *Falconer v. Penn Mar., Inc*., 380 F. Supp.2d 2, 5 (D. Me. 2005) ("As it was

under common law, expert testimony is admissible under Rule 702 if it concerns matters beyond the understanding of the average person.") (citation and internal quotation marks omitted).

Two final points merit comment. To the extent the plaintiff relies on the opinion of the defendant's expert, Thomas Hill, to buttress her own expert's conclusions – either as a matter of fair play or as a factual matter – her reliance is misplaced. Briggs did not state that he relied on Hill; Hill's testimony therefore is irrelevant. *See, e.g., Reali v. Mazda Motor of Am., Inc.*, 106 F. Supp.2d 75, 79 (D. Me. 2000) ("Reali devoted much of his briefing to impugning the methodology employed by, and conclusions of, Mazda's expert, Thibault, claiming that Thibault's methodology was no better. The effort is misguided. The issue presented by Mazda's motion *in limine* is whether [the] testimony [of Reali's expert] satisfies the reliability and relevance standards of *Daubert* and *Kumho* Tire."). In any event, as the defendant points out, Hill is expected to testify merely that the Vessel door in question was "equipped with an appropriate hydraulic door-closer"; he did not state that lack of such a device represents a breach of safe and reasonable maritime practices. *See* Reply at 3.

Finally, to the extent the plaintiff asserts that Briggs did follow an acceptable methodology – the practice of ruling out the least likely possibilities – her point is not well-taken in these circumstances. Caselaw on which she relies for the proposition that such methodology is acceptable is distinguishable inasmuch as those cases concerned medical opinions (medical diagnoses; opinion based on results of laboratory testing) and, to the extent the experts' testimony was ruled admissible, involved greater explication of the bases of their conclusions than was provided here. *See* Opposition at 4; *see also, e.g., Labarraque*, 101 F.3d at 140 (expert's methodology passed *Daubert* muster in case in which he explained why, based on review of literature, medical records and medical studies, he had eliminated possible causes of plaintiff's birth defects besides Depo-Provera); *Claar v. Burlington N. R.R.*, 29 F.3d 499, 502-03 (9th Cir. 1994) (district court did not err in deeming

proffered expert testimony unreliable in case in which, *inter alia*, expert doctors had made no effort to rule out other possible causes of plaintiffs' injuries even though they admitted such a step would be standard procedure before arriving at a diagnosis); *United States v. Natson*, 469 F. Supp.2d 1253, 1258 (M.D. Ga. 2007) (while government's expert reliably applied a scientifically valid DNA testing method to conclude that DNA testing did not exclude defendant as father of fetus, testimony was irrelevant because jury could only speculate from that opinion that defendant was in fact the father).[1]

### III. Conclusion

For the foregoing reasons, the Motion, which the plaintiff has withdrawn as to Dr. Halsey and other health-care providers, is **GRANTED** as to Briggs.

Dated this 26th day of February 2008.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge

---

[1] The plaintiff requests that, if the court were inclined to grant the Motion as it pertained to Briggs, it first conduct an evidentiary *Daubert* hearing. *See* Opposition at 6. She notes that this could be accomplished during trial "without any complicated machinations" inasmuch as this is a bench trial. *See id.* A proponent of expert testimony is not entitled as a matter of right to a *Daubert* hearing. *See, e.g., United States v. Diaz*, 300 F.3d 66, 73-74 (1st Cir. 2002); *Target Mkt. Publ'g, Inc. v. ADVO, Inc.*, 136 F.3d 1139, 1143 n. 3 (7th Cir. 1998). It is difficult to discern what useful purpose would be served in convening such a hearing in this instance: The plaintiff does not say what testimony she would present if the hearing were held, and the nature of the argument made in her brief suggests that she has nothing to add. *See, e.g., ADVO*, 136 F.3d at 1143 n.3 ("[T]he Supreme Court did not suggest in either *Daubert* or *General Electric* [*Co. v. Joiner*, 522 U.S. 136 (1997),] that district courts would be required to conduct *in limine* hearings concerning every rejected proffer of expert testimony. The district court in the present case had before it Burton's report and all of the documents upon which that report purportedly drew. Target is apparently unable to tell this Court exactly what missing information a hearing would have supplied to aid the district court in making its determination. A hearing was not required.").